**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LISA A. BOBENRIETH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 13-283** |
| | ) | **Magistrate Judge Lisa Pupo Lenihan** |
| **CAROLYN W. COLVIN, ACTING** | ) | |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

### I.  INTRODUCTION

Lisa A. Bobenrieth ("Plaintiff"), brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of the final determination of the Commissioner of Social Security ("Defendant" or "Commissioner") denying her application for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI") under Titles II and XVI of the Social Security Act ("the Act").  This matter comes before the Court on cross motions for summary judgment.  (ECF Nos 11, 13).[1]  For the reasons that follow, Plaintiff's motion is denied and Defendant's motion is granted.

### II.  PROCEDURAL HISTORY

Plaintiff applied for SSI and DIB on February 26, 2009, alleging a disability onset date of September 1, 2007.  R. at 153, 157.  Her alleged disabling impairments were fibromyalgia, demyelinating disease, chronic headaches, lower back pain, dizziness, and balance problems.  R. at 175.  Both claims were denied on June 10, 2009.  R. at 90, 96.  Plaintiff filed a request for a hearing by an Administrative Law Judge ("ALJ") on June 16, 2009.  R. at 114.  A hearing was

---

[1]      Citations to ECF Nos. 6-1: 6-21, the Record, *hereinafter*, "R. at _."

held before ALJ Nancy Gregg Pasiecznik on December 8, 2010.  R. at 43.  The ALJ denied

Plaintiff's claims in a decision dated September 21, 2011.  R. at 36.  The Appeals Council denied

Plaintiff's request for review on July 8, 2013 at which time it became the final decision of the

Commissioner.[2]  R. at 1.  Plaintiff submitted additional evidence to the Appeals Council along

with her request for review.  R. at 536-987.

On September 10, 2013, Plaintiff filed a Complaint in this Court.  (ECF No. 2).

Defendant filed an Answer on December 16, 2013.  (ECF No. 5).  Plaintiff filed its motion for

summary judgment and brief in support on January 21, 2014.  (ECF Nos. 11-12).  On February

21, 2014, Defendant filed its motion for summary judgment and supporting brief.  (ECF No. 13-

14).  This matter has been fully briefed and is ripe for disposition.

## III.   STATEMENT OF THE CASE

### a.   Employment History

Plaintiff previously worked as a retail cashier, restaurant manager, assistant convenience

store manager, and tax preparer.  R. at 184, 194.  She last worked in June 2006.  R. at 47.

Plaintiff left that position when she relocated out of the state.  R. at 49.

### b.   Summary of the Relevant Medical Evidence

#### i.   Bradley Giannotti, M.D.,

On May 23, 2008, Bradley Giannotti, M.D, noted that a Magnet Resonance Image

("MRI") of Plaintiff's left shoulder showed evidence of tendonitis without tear and a possible

small subacromial spur.  R. at 412.  Dr. Giannotti performed a left carpal tunnel release

---

[2]      The Court has jurisdiction to review only the Commissioner's "final decision."  *Califano v. Sanders*, 430 U.S. 99, 108-109, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977); *Bacon v. Sullivan*, 969 F.2d 1517, 1519-1521 (3d Cir. 1992).  The ALJ's decision became the Commissioner's ("Defendant's") "final decision" in this case when the Appeals Council denied Plaintiff's request for review.

procedure on September 4, 2008.  R. at 367-368.  A right carpal tunnel release was performed on July 24, 2008.  R. at 372.

### ii.  Erica Grazioli, M.D.,

Dr. Grazioli ordered a magnetic resonance angiogram of Plaintiff's brain on September 29, 2008.  R. at 281.  A report completed by James Oskin, M.D, showed visualized vessels within normal limits and no evidence of aneurysm or occlusive disease.  *Id.*  An MRI report from the same day noted spondylosis and a possible cord lesion.  R. at 281-282.

On August 22, 2008, Dr. Grazioli noted non-specific white matter changes in an MRI of Plaintiff's brain.  R. at 424.  Demyelinating disease was doubtful as a diagnosis.  *Id.*  The findings were possibly secondary to migraines, high blood pressure, and tobacco abuse.  *Id.*  Plaintiff had a benign pineal cyst, chronic headaches, leg pain and swelling upon exertion, decreased reflexes in her ankles, and diminished balance.  *Id.*  Plaintiff was advised to make recommended dietary changes in response to her headaches and to stop smoking.  *Id.*

Dr. Grazioli ordered a fluoroscopic guided lumbar puncture on November 5, 2008.  R. at 276.  She tolerated the procedure well and there were no immediate complications.  *Id.*  Dr. Grazioli ordered MRIs of Plaintiff's cervical and thoracic spine on December 4, 2008 at Hamot Medical Center.  R. at 268-269.  A report on the cervical spine MRI completed indicated that a previously questioned cord lesion noted in a previous exam was not observed at this time.  *Id.*  Degenerative changes to Plaintiff's vertebrae were stable.  *Id.*  The report on Plaintiff's thoracic spine MRI stated that it was an "unremarkable exam."  *Id.*  An MRI of Plaintiff's lumbar spine completed on February 24, 2009 showed intact vertebrae with good alignment at all levels.  R. at 334.  The report concluded that her lumbar spine was normal.  R. at 335.

Plaintiff's headaches were "much better" when she returned on March 2, 2009. R. at 418. An MRI of Plaintiff's brain on March 13, 2009 showed mild white matter changes. R. at 386. The MRI was characterized as otherwise normal. *Id*. An assessment completed by Dr. Grazioli on May 19, 2009 indicated the following: Plaintiff's gait was within normal limits; an assistive device was not used for ambulation with or without weight-bearing; power of five out of five bilaterally in upper and lower extremities; plaintiff was able to perform fine and dexterous movements; five out of five grip strength in her right hand; and three out of five in her left. R. at 416-417.

### iii.　Jason Tronetti, M.D.,

Jason Tronetti, M.D., a family medicine practitioner, began treating Plaintiff on June 18, 2008. R. at 300. She had a family history of heart disease. *Id*. Her symptoms were dizziness, chest pain, shortness of breath with exertion, irregular pulse, diarrhea, chronic fatigue, joint pain, difficulty sleeping, blurred vision, numbness and tingling in her extremities, back pain, and swollen ankles. *Id*. Plaintiff also alleged suffering from migraines which occurred twice per month but were becoming less severe with medication. *Id*. Plaintiff did not use support hose or socks for her ankle swelling. *Id*. She was not taking medication for depression and did not note any significant depressive symptoms. *Id*. Dr. Tronetti prescribed numerous tests including a brain scan due to migraine symptoms. R. at 301-302. An X-ray of Plaintiff's feet indicated spurring but was "otherwise unremarkable." R. at 406.

Plaintiff returned to Dr. Tronetti on June 26, 2008 and complained of low back pain. R. at 299. She denied injury, overexertion, or pain radiating down the side of her legs. *Id*. There was not any weakness or tingling in her legs. *Id*. She alleged difficulty getting comfortable at night and increased pain when standing for a long period of time. *Id*. She was able to flex,

extend, and bend side to side at the waist with minimal pain. *Id*. Her straight leg raise was negative. *Id*. Dr. Tronetti ordered a scan of Plaintiff's brain on July 2, 2008 which showed a possible pineal cyst. R.at 360. A stress test ordered by Dr. Tronetti on July 14, 2008 showed fair exercise capacity, mild hypertensive response, and no chest pain. R. at 350. An MRI completed the same day showed multiple areas of glial scarring in the white matter track. R. at 358.

Dr. Tronetti noted on July 21, 2008 that the results of Plaintiff's stress test "looked very good." R. at 297. She complained of swelling in her feet and legs. *Id*. Plaintiff was prescribed hydrochlorothiazide, told to drink plenty of liquids, use compression hose, elevate her feet, and limit her salt intake. *Id*. An exam of Plaintiff's sinuses on July 24, 2008 indicated mild inflammatory change with cysts in both maxillary sinuses. R. at 357.

On August 21, 2008, Dr. Tronetti noted that Plaintiff was "doing pretty well" and there were no significant problems. R. at 296. An MRI showed glial scarring. *Id*. Dr. Tronetti ordered an MRI of Plaintiff's right ankle on September 3, 2008. R. at 346. It showed normal alignment with no facture or dislocation. *Id*. She returned to Dr. Tronetti on September 24, 2008 for breast, pap, and pelvic exams. R. at 294.

Plaintiff reported chronic headaches on December 30, 2008. R. at 293. There was evidence of matter disease or gliosis on her MRI. *Id*. She had a pineal cyst which was stable. *Id*. She again complained of muscle, joint, and body pain. *Id*. Dr. Tronetti referred her to a fibromyalgia specialist, Kalliopi Nestor, M.D. *Id*.

Dr. Tronetti signed a Pennsylvania Department of Public Welfare Employability Assessment Form on December 30, 2008. R. at 283-284. The first page of the form included a summary of Plaintiff's symptoms and alleged impairments. R. at 283. On the second page Dr. Tronetti indicated that Plaintiff became disabled on December 29, 2008 and would remain

disabled until December 30, 2009.  R. at 284.  Although boxes were checked indicating that the assessment was based upon physical examination, medical records, and clinical history, the portion of the form labeled "EXAMINATION RESULTS" included only a list of Plaintiff's diagnoses, headaches and fibromyalgia.  *Id*.  No clinical findings or explanations were provided. *Id.*

On March 9, 2009, Dr. Tronetti noted than an MRI of Plaintiff's lumbar spine was normal.  R. at 292.  She continued to suffer from low back pain, which Dr. Tronetti believed was related to spasms.  *Id*.  Dr. Nestor had prescribed amitriptyline, which was "really alleviat[ing] headaches."  *Id*.  Dr. Tronetti believed that her weight was creating increased pressure on her lower spine.  *Id*.  Fibromyalgia was a possible contributor.  *Id*.  She was instructed to continue treatment.  *Id*.

### iv.    Kalliopi Nestor, M.D.,

Dr. Tronetti referred Plaintiff to Kalliopi Nestor, M.D., at Charles Cole Memorial Hospital.  R. at 287.  On June 11, 2008, Dr. Nestor noted Plaintiff's complaint of numbness in her hands.  *Id*.  Plaintiff was dropping things while trying to grasp them.  *Id*.  Pain in her left wrist radiated into her elbow.  *Id*.  She drank alcohol occasionally and smoked one pack of cigarettes per day.  *Id*.  Objective findings were as follows: alert and oriented times three; cranial nerves two through twelve grossly intact; five out of five motor in upper and lower extremities bilaterally with the exception of hand grip; intact muscle stretch reflexes and symmetrical on bilateral biceps, triceps, brachioradialis, patella and achilles tendon; and a full range of motion in her cervical and lumbar spine.  R. at 285-286.  The results of an EMG were abnormal and showed evidence of bilateral carpal tunnel syndrome.  R. at 288.

Plaintiff returned to Dr. Nestor on January 23, 2009 complaining that she had suffered pain throughout her body for approximately the last year and a half. R. at 285. Plaintiff told Dr. Nestor that she did not drink alcohol and smoked one half of a pack of cigarettes per day. *Id*. Dr. Nestor recorded the following symptoms: dizziness, frequent and severe headaches; depression and anxiety; night sweats; shortness of breath; swelling of the hands and feet; extreme tiredness and weakness; and abnormal thirst. *Id*. She did not suffer from weakness in her muscles and tried to stay as active as possible. *Id*. Objective findings were unchanged from the previous exam. R. at 285-286. Plaintiff was positive for fourteen of eighteen fibromyalgia tender points. R. at 286. Dr. Nestor's impression was that Plaintiff suffered from fibromyalgia. *Id*.

### v.      Rodolfo Arreola, M.D.,

Plaintiff was seen by Rodolfo Arreola, M.D., on May 21, 2009 for a bariatric surgery consultation. R. at 526. Dr. Arreola opined that Plaintiff was an excellent candidate for the procedure. *Id*. A pre-operative assessment was required, along with documentation evidencing four months of supervised dieting. *Id*. She was cleared for surgery on December 24, 2009 but medical assistance deemed it unnecessary on January 11, 2010 and denied coverage. R. at 532.

### vi.      Consultative Evaluations

On June 1, 2009, Anne Zaydon, M.D., completed a consultative evaluation of Plaintiff's medical records. R. at 478-484. Dr. Zayond assessed Plaintiff's exertional limitations as follows: occasionally able to lift and/or carry twenty pounds; frequently able to lift and/or carry ten pounds; able to stand and/or walk approximately six hours in an eight hour day; able to sit for approximately six hours in an eight hour day; unlimited in her ability to push and/or pull as consistent with lift/carry restrictions. R. at 479. As for postural limitations, Plaintiff was

occasionally able to climb ramps, stairs, ladders, ropes, or scaffolds and frequently able to balance, stoop, kneel, or crouch. R. at 480. Plaintiff was occasionally able to crawl. *Id.* She did not have any manipulative, visual, or communicative limitations. R. at 479-481. As to environmental limitations, Plaintiff was to avoid concentrated exposure to the following: extreme cold or heat, wetness, humidity, fumes, odors, dusts, gasses, poor ventilation, machinery, and heights. R. at 481.

Dr. Zaydon indicated that the limitations assessed in her residual functional capacity ("RFC") were significantly different than those assessed by Dr. Tronetti. R. at 482. She concluded that the existence of the following impairments was supported by the record: fibromyalgia; degenerative disc disease of the cervical spine; migraines; hypertension; and morbid obesity. R. at 483. Treatment for these impairments was characterized as "essentially routine and conservative in nature." *Id.* The evidence supported a conclusion that Plaintiff was able to care for herself and maintain her home. *Id.* Plaintiff's statements were found partially credible based upon the record evidence. *Id.* Dr. Zaydon noted that Dr. Tonetti's conclusion that Plaintiff was disabled from work was an issue reserved to the commissioner. *Id.*

John Chiampi, M.D., completed a psychiatric review technique on June 10, 2009. R. at 485-497. He identified no medically determinable impairments and no coexisting nonmental impairments which required referral to another specialist. R. at 485. Plaintiff had complained of depression but had not sought treatment. *Id.*

### vii. <u>Additional Evidence Submitted by Plaintiff</u>

**A**fter the ALJ's decision, Plaintiff submitted additional evidence to the Appeals Council. R. at 539-987. Plaintiff contents that the ALJ erred by ignoring Dr. Tronetti's most recent treatment notes and medical opinion. (ECF No. 12 at 12). Dr. Tronetti's most recent opinion,

dated October 27, 2010, was not submitted by Plaintiff until after the ALJ's decision. The following is a summary of Dr. Tronetti's additional records.

On June 3, 2009, Dr. Tronetti opined that physical findings were unremarkable and Plaintiff's hypertension was clinically stable. R. at 579. A treatment note completed by Dr. Tronetti on December 16, 2009 indicated that Plaintiff was in no acute distress. R. at 565. She complained of dizziness, tinnitus, and hearing impairments. *Id.* An MRI was recommended. (*Id.*).

Dr. Tronetti treated Plaintiff for vertigo and dizziness on January 4, 2010. R. at 559. No acute abnormality, stroke, or hemorrhage was observed. A sleep study ordered by Dr. Tronetti on February 23, 2010 indicated mild obstructive sleep apnea. R. at 554. Avoidance of alcohol and tobacco was recommended. R. at 555. An MRI of her brain dated April 2, 2010 was normal. R. at 553. Dr. Tronetti's physical exam was unremarkable. *Id.* Plaintiff told Dr. Tronetti that her fatigue was improved since using a sleep apnea machine. R. at 547. Dr. Tronetti noted that Plaintiff still suffered from sleep apnea on July 23, 2010. R. at 545. He recommended increased physical activity and a sixteen hundred calorie per day diet. *Id.* On August 24, 2010, Dr. Tronetti recommended increased aerobic output and fluid intake. R. at 540.

Dr. Trenotti completed a Medical Source Statement Regarding the Nature and Severity of an Individual's Physical Impairments on October 27, 2010. R. at 583-585. This form consisted of a series of check mark boxes. Supportive findings were not provided. Plaintiff's exertional limitations were assessed as follows: occasionally able to lift and/or carry twenty pounds; frequently able to lift and/or carry ten pounds; able to stand and/or walk for no more than two hours in and eight hour work day; able to sit for no more than three hours in an eight hour work

day; off of task for ten to fifteen minutes after each position change; and limited to pushing and/or pulling in her upper extremities. *Id*. As to postural limitations, Dr. Tronetti opined that Plaintiff was never able to climb or crawl and occasionally able to balance, kneel, crouch, or stoop. R. at 584. With regard to manipulative limitations, Plaintiff was limited in her ability to reach in all directions and unlimited in handling, fingering, and feeling. *Id*. She was not assessed with any visual, communicative, or environmental limitation. R. at 585. Finally, Dr. Trenotti opined that Plaintiff would be: likely to call off of work three days per week; unable to complete a full day of work on three days in a five day work week; and required to take four to eight breaks in excess of five to ten minutes during an eight hour work day. *Id*.

Dr. Trenotti observed that Plaintiff had lost some weight on January 11, 2011. R. at 603. Plaintiff was treated by Dr. Tronetti on April 21, 2011 at which time she reported increased pain and difficulty getting around. R. at 595. She informed him that medical assistance had approved gastric bypass surgery. R. at 596.

Dr. Plaintiff underwent gastric bypass surgery on April 5, 2011. R. at 594. She suffered complications after the procedure. R. at 587-588, 631-638. Plaintiff was hospitalized for respiratory failure on April 15, 2011. R. at 631-638.

### c. **Administrative Hearing**

A hearing was held before ALJ Nancy Pasiecznik on December 8, 2010 in Buffalo, New York. R. at 43. Plaintiff testified and was represented by counsel, R. Christopher Brody, Esq. *Id*. Plaintiff's date of birth is June 16, 1965 and she was forty-six years old at the time of the hearing. R. at 46. She was five feet and two inches tall and weighed two hundred and fifty pounds. *Id*. Plaintiff completed a GED but did not have any specialized skills or vocational

training.  R. at 47.  She was divorced and shared her home with another person who was also unemployed.  *Id*.

From 1997 to 1998 Plaintiff worked full-time at a convenience store.  R. at 53.  Her responsibilities consisted of running the cash register, stocking shelves, and cleaning.  She lifted and carried up to thirty pounds occasionally and twenty pounds frequently.  Plaintiff spent all of her time at this job on her feet.  *Id*.  She worked part-time for Ames Department Store for three months between 1998 and 1999 where she occasionally lifted and carried ten pounds.  R. at 52-53.

From July 2000 to September 2005 Plaintiff worked full-time as a restaurant manager.  R. at 49, 51.  Her duties consisted of setting up cash drawers, occasional cooking, waiting on customers, and packaging delivery orders.  *Id*.  Plaintiff trained and supervised four other employees but did not have the authority to hire or fire.  R. at 50.  The restaurant seated seventy-five people and Plaintiff described it as casual.  *Id*.  Her job required her to lift and carry twenty pounds frequently and fifty pounds occasionally.  R. at 51.  Plaintiff was on her feet for the entire shift.  R. at 53.  She left this position for another job.  R. at 51-52.

Her last work was as an assistant manager of a convenience store in June 2006.  *Id*.  Plaintiff's job responsibilities consisted of stocking shelves, fillings coolers, completing orders, running the register, selling lottery tickets, and running a basic accounting computer program.  R. at 48.  She supervised one employee but did not have the authority to hire or fire.  *Id*.  On a typical day in this position, Plaintiff lifted and carried fifty pounds at most.  R. at 48-49.  She frequently lifted and carried twenty pounds.  R. at 49.  Plaintiff left this job because she moved out of state.  *Id*.  Additional work by Plaintiff for a tax preparation service did not constitute significant gainful activity.  R. at 54.

Plaintiff's attorney listed her alleged disabling impairments as follows: fibromyalgia, chronic headache, low back pain, demyelinating disease, and carpal tunnel syndrome. *Id*. Plaintiff indicated that fibromyalgia was the biggest impediment to her ability to work, followed by back pain, headaches, and demyelinating disease, in that order. *Id*.

An examination of Plaintiff by her attorney followed. R.at 55. Plaintiff was diagnosed with fibromyalgia in 2007. *Id*. She alleged symptoms from fibromyalgia dating back to 2006. *Id*. Plaintiff testified to back, arm, and shoulder pain. R. at 56. She said her pain prevented her from lifting or staying on her feet at work. *Id*. Employers were unhappy that Plaintiff sat down at work when she was in pain. *Id*.

Plaintiff alleged suffering from migraines twice a week since 2006, the onset of which would cause her to lose vision in her left eye for the duration of the headache. *Id*. She testified that her headaches lasted for hours and prevented her from being around bright lights or loud noise. R.at 57. Occasionally, her migraines caused nausea and vomiting. R.at 57. She took Excedrin migraine to treat her headaches but it was not effective. *Id*. Plaintiff was prescribed Tramadol and Amitriptyline in addition to Prozac for depression. R.at 58. The ALJ then asked counsel to clarify that Plaintiff was not alleging depression as a disabling impairment. *Id*. Although Dr. Tronetti had prescribed Prozac for depression, Plaintiff had not been referred to a psychiatrist. *Id*. Counsel further clarified that Plaintiff was alleging obesity as a disabling impairment. *Id*.

Counsel resumed examination of Plaintiff regarding her headaches. *Id*. Plaintiff alleged her migraines began occurring daily a year ago and medication did not help. *Id*. She alleged that her doctors had linked the headaches to fibromyalgia and demyelinating disease. R.at 59. Plaintiff testified that an MRI indicated glial scarring of white matter, a cystic pineal lesion on

her pineal gland, and a maxillary sinus retention cyst on each side.  *Id*.  These conditions allegedly contributed to Plaintiff's headaches.  *Id*.  Plaintiff explained that her physicians had not indicated they could resolve these conditions.  *Id*.  She continued to receive treatment from her primary care physician Dr. Tronetti.  R. at 60.  Dr. Tronetti referred Plaintiff to Dr. Nestor, whom she saw every three months, and Dr. Grazioli.  *Id*.  Dr. Grazioli was no longer treating her because there were no more treatment options.  R. at 61.

Counsel returned to the subject of Plaintiff's fibromyalgia.  R. at 61.  She alleged that the condition had worsened.  *Id*.  She testified that she could no longer walk while shopping at the grocery store and now required a "scooter."  *Id*.  Plaintiff also alleged inability to clean, vacuum, mop, make the bed, or fold laundry.  *Id*.  Pain pills were ineffective.  *Id*.  Plaintiff testified that her personal hygiene was had been affected by her impairments since 2007.  R. at 61-62.  She was not able to wipe herself clean, needed assistance getting in and out of the bathtub, and needed a chair in the shower because she could not stand.  R. at 62.  Physical therapy did not help. *Id*.

Plaintiff alleged that she has suffered from low back pain since 2006.  *Id*.  It prevented her from lifting and standing at work.  R. at 62-63.  The condition allegedly had become worse and Plaintiff could not get up and go the bathroom without supporting herself on walls, counters, or furniture.  R. at 63.  She also testified to dizziness when bending at the waist.  *Id*.

The ALJ asked Plaintiff about a lumbar spine MRI dated February 2009, the results of which were normal.  *Id*.  Plaintiff explained that her doctors attributed her back pain to obesity and fibromyalgia.  R. at 64.  Her physicians placed her on a special diet to treat her weight problem but she did not have any success.  *Id*.  She attributed her difficulty to being unable to walk or exercise.  *Id*.

Counsel resumed his examination by asking Plaintiff about her ability to stand. *Id*. She explained that she could stand for ten minutes before she had to sit down or lean against something due to tightness in her back. *Id*. On a typical day, Plaintiff would lay on her couch at the onset of pain. *Id*. She used an electric nerve stimulator and a heating pad. *Id*. The heating pad provided some relief but not enough for Plaintiff to be active. R. at 65. Plaintiff testified that she experienced swelling in her legs, feet, and ankles when sitting down and had been told by her doctors to elevate her feet. *Id*. She lays down ninety percent of the time. *Id*.

Plaintiff alleged suffering from cramps in her calves after sitting too long, standing, or walking. *Id*. She underwent two surgeries on her right hand to treat numbness which prevented her from grasping. R. at 67. Plaintiff could not pick up small objects or fold laundry. *Id*. Her symptoms were improved for a time after her second surgery but the numbness would return if she held a phone or utensil. *Id*. She also alleged difficulty opening medication, tying her shoes, and using buttons with her right hand. R. at 68.

The ALJ interrupted to ask if the medical records from the aforementioned surgeries had been submitted. *Id*. Counsel responded that the reports were not in the record. *Id*. Plaintiff explained that her first surgery was performed at Bradford Hospital by Dr. Diforno and the second was completed at Charles Cole Memorial Hospital by Dr. Gionatti. *Id*.

Dr. Gionatti also performed surgery on Plaintiff's left hand. R. at 69. Plaintiff suffered from numbness, tingling, and weakness in that hand as well. *Id*. Her symptoms were improved after surgery but later recurred. R. at 70. She explained that her shoes were always tied because she could not hold the laces and a friend helped her with zippers and buttons. *Id*.

Plaintiff suffered from infections in the skin folds under her belly. *Id*. She had also been diagnosed with insulin resistance and borderline diabetes. R. at 71. Her thyroid functioned

properly. *Id.* Doctors had also recommended support hose and stockings, which she testified she started using in 2008. R. at 71-72. She told the ALJ that she was not wearing them during the hearing and the ALJ noted that treatment records from 2008 indicated she was not wearing them at the time either. R. at 72. Plaintiff alleged that she started wearing them soon after. *Id.* She was denied gastric bypass on the grounds that she had not lost weight by dieting prior to surgery and did not provide an accurate record of her diet. R. at 72-73. She alleged weighing herself daily. R. at 73.

Plaintiff suffered from sinus infections which she associated with cysts. R. at 73. Eight months ago she completed a sleep study and was diagnosed with obstructive sleep apnea. R. at 74. She used a continuous positive airway pressure ("CPAP") machine every night. It was somewhat effective but some nights she took it off in her sleep. *Id.* Plaintiff's doctor recommended a full face mask due to her sinus infection but it was denied by medical assistance. R. at 75.

Plaintiff alleged suffering side effects from her medication. R. at 76. She took Soma three times per day which made her tired and "groggy." R. at 76-77. Tramadol had similar effects. *Id.* The ALJ inquired about the possibility her physicians reducing her dosage of Soma and Plaintiff explained that she tried to take less but it resulted in her back locking up and the pain brought her to tears. R. at 77. Counsel asked about side effects from other medications and Plaintiff explained that Prozac disoriented her physically. *Id.* She also alleged suffering from vertigo as many as three times per day. R. at 78. The onset of these episodes was not predictable and afterwards she could not get around her home without holding onto something. *Id.* Plaintiff alleged suffering from tinnitus which increased her headaches. R. at 79. She was referred to Dr. Aktar who said there were no treatment options. *Id.* Upon inquiry by the ALJ

regarding records of that treatment, counsel explained that this was the first he had heard of Dr. Aktar and they did not have the records.  R. at 80.  Plaintiff explained that she was treated by Dr. Barkley until 2006 but was dissatisfied with his treatment and switched physicians.  R. at 80.

The ALJ asked Plaintiff about her exertional limitations.  R. at 81.  She alleged the following: limited to lifting and carrying five pounds for a distance of ten feet; unable to push a half-full shopping cart; unable to climb a flight of stairs; unable to kneel occasionally; unable to crouch or squat occasionally; able to crawl but not able to rise; unable to bend or stoop; unable to reach above her head; unable to stand for more than five minutes without leaning or holding on to support;  unable to walk on a flat surface for five minutes or more; and unable to sit in a comfortable desk chair with padding for more than ten or fifteen minutes.  *Id*.  Her symptoms were aggravated by cold and damp weather.  *Id*.  She spent about ninety-five percent of the time between 9:00 A.M. and 5:30 P.M. on the couch watching television.  R. at 82.  Plaintiff concluded by stating that she used to be active and had lost her quality of life.  *Id*.  At the close of the hearing, counsel told the ALJ that additional treatment records from Dr. Tranetti had been submitted as new evidence and were now part of the record.[3]  R. at 83.

## IV.  STANDARD OF REVIEW

This Court's review is plenary with respect to all questions of law.  *Schaudeck v. Comm'r of Soc. Sec. Admin*, 181 F.3d 429, 431 (3d Cir. 1999).  With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence."  42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994).  The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record.  *Monsour Med. Ctr.v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986).

---

[3]      Although counsel testified that this evidence was submitted prior to the hearing, the record indicates that it was not submitted until after the ALJ's decision when Plaintiff requested review by the Appeals Council.  R. at 6, 39, 83.

Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Sec'y of Health & Human Serv.*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Sec'y of Health, Educ. & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations

for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively-delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process by stating as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (footnotes omitted). Factual findings pertaining to all steps of the sequential evaluation process are subject to judicial review under the "substantial evidence" standard. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360-361 (3d Cir. 2004).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194, 196 (1947), the Supreme Court explained:

When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Id.* at 196. The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision. *Cefalu v. Barnhart*, 387 F.Supp.2d 486, 491 (W.D.Pa. 2005).

## V. DISCUSSION

### a. The ALJ's Decision

The ALJ found that Plaintiff met the insured status requirement from her alleged onset day of September 1, 2007 through December 31, 2011. R. at 18. She had not performed any substantial gainful activity after her onset date. *Id.* Plaintiff had the following severe impairments:

cervical spondylosis at C4-5 with mild canal stenosis; a history of fibromyalgia/myofascial pain syndrome; glucose intolerance; hypertension; bilateral maxillary sinus retention cysts, left greater than right; migraine headaches; obesity; tobacco use disorder; tobacco use; and, as of 2008 supraspinatous tendinitis without tear of the left shoulder.

R. at 18-19. She had the following non-severe impairments:

bilateral calcaneal spurring; obstructive sleep apnea; bilateral carpal tunnel syndrome, status post right carpal tunnel release surgery in 2003 per report and again on July 23, 2008, and left carpal tunnel release surgery on September 4, 2008; mild white matter changes of small vessel disease; and a benign 1.5 pineal cyst.

R. at 19. Hypertension, tobacco use, and cysts were found severe because they may cause or contribute to migraine headaches. *Id.* The ALJ concluded that the record did not support work-

related functional limitations stemming from her non-severe impairments. *Id*. The ALJ completed a thorough review of the relevant evidence and concluded that Plaintiff's impairments did not meet or equal in severity the criteria specified in 20 C.F.R., Pt. 404, Subpt. P, App'x 1. R. at 20-29.

> Plaintiff's RFC was assessed as follows:
>
> Since September 1, 2007, the claimant has retained the RFC to perform the full range of light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b). Specifically, the claimant is able to lift, carry, push, and pull 20 pounds occasionally and ten pounds frequently; stand and/or walk for six hours in an eight-hour workday, with normal breaks; and she has no limitations in sitting (she can at least sit for six hours) in an eight-hour workday, with normal breaks. The claimant also has non-exertional limitations. She is able to frequently balance, stoop, and kneel; can occasionally climb stairs and ramps, crouch and crawl; but can never climb ladders or scaffolds (due to her weight). She should avoid *repetitive* overhead reaching and avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, fumes, odors, dusts, gases, poor ventilation, and hazards. She has no other significant limitations.

R. at 29. This RFC was followed by a review the relevant medical evidence and Plaintiff's testimony. R. at 29-34. The ALJ concluded that Plaintiff's complaints and allegations were not sufficiently supported by objective medical evidence to establish total disability. R. at 33.

The ALJ concluded that Dr. Tronetti's opinion dated December 30, 2008 was not accompanied by supportive findings. That report also failed to identify any specific limitations. It was not accorded any significant weight. The ALJ noted that Dr. Tronetti's opinion that Plaintiff's was disabled from work was disabled from work was given consideration. The ultimate issue of disability was, however, reserved to the Commissioner. *Id*.

The opinion of Anne Zaydon, M.D., who completed a consultative evaluation of the medical records on behalf of the state Disability Determination Service, was accorded great weight. R. at 33-34. The ALJ found Dr. Zaydon's conclusions to be supported by the record. R. at 34. The ALJ noted the consultative evaluation completed by John Chiampi, Ph.D., also on

behalf of the state agency.  Dr. Chiampi concluded that the claimant had no medically determinable mental impairmentsThe ALJ explained that objective medical evidence revealed that Plaintiff's symptoms were controlled with treatment.  *Id.*

At step 4, the ALJ found that Plaintiff has been capable of performing her past relevant work as a cashier in a convenience and department store since her alleged onset date.  *Id.*  At no time since that date had she been under a disability within the meaning of the Act. She was considered to be a younger individual during the period addressed in the ALJ's decision. Plaintiff had the equivalent of a high school education.   Her past employment consisted of both skilled and semi-skilled work.   Transferability of any acquired work skills was not a material issue in view of Plaintiff's age, education, and RFC.  *Id.*

Although the ALJ found Plaintiff not disabled at step 4, she provided an alternative finding that Plaintiff was able to make a successful vocational adjustment to perform other jobs existing in significant numbers in the national economy.  R. at 35.  This finding was based upon consideration of Plaintiff's RFC, age, education, and past relevant work along with the Medical-Vocational Guidelines.  *Id.*  Finally, the ALJ found that Plaintiff was disabled under the Act at any time from her alleged onset date of September 1, 2007 to the date of the decision September 21, 2011.  R. at 36.

### b.  Plaintiff's Objections to the ALJ's Decision

On appeal before this Court, Plaintiff offers two main arguments.   First, Plaintiff contends that substantial evidence did not support the ALJ's consideration of the medical evidence.  (ECF No 12).  This objection consists of the following sub-arguments: (1) the ALJ erred in not granting significant weight to Dr. Trenotti's opinions; (2) the ALJ failed to provide sufficient explanation for rejecting those opinions; and (3) the ALJ erred by granting significant

weight to the consultative evaluations. (ECF No 12 at 11-14). Second, Plaintiff argues that the ALJ erred as a matter of law in failing to use a vocational expert to evaluate the Plaintiff's non-exertional limitations at step 5. (ECF No. 12). Defendant responds that the ALJ's decision was supported by substantial evidence. (ECF No. 14). For the reasons that follow, Plaintiff's arguments must fail.

## VI.    DISCUSSION

### a.    The ALJ's Analysis of the Medical Evidence

Plaintiff argues that the ALJ erred by granting little weight to Dr. Tronetti's medical opinions and failed to provide a sufficient explanation for that decision. (ECF No. 12 at 12). Defendant responds that the ALJ analyzed the medical evidence in accord with the governing regulations and the ALJ's decision is supported by substantial evidence. (ECF No. 14 at 12). Plaintiff's argument is without merit.

The record contains two opinions by Plaintiff's primary care physician, Dr. Tronetti. The first was completed on December 30, 2008 and consisted of a conclusory statement that Plaintiff was partially disabled from work along with a list of Plaintiff's diagnoses. R. at 33, 283-284. The ALJ noted that this report lacked supporting explanations and offered an opinion on an issue reserved to the Commissioner. It was accorded little weight but the ALJ did indicate that she was giving it consideration. *Id*. Dr. Tronetti's second opinion was signed on October 27, 2010 and submitted by Plaintiff to the Appeals Council after the ALJ's decision. R. at 6, 583-585.

As Plaintiff correctly notes, the opinions of a claimant's treating physician are entitled to substantial and potentially controlling weight. *Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001). In order for the opinion of a treating physician, however, to be granted greater weight, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques

and…not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(c)(2). After evaluating all of the evidence in the record, the ALJ may assign a non-treating physician's opinion greater weight if that decision is supported by substantial evidence. *Brown v. Astrue*, 649 F.3d 193, 196 (3d Cir. 2011). The ALJ may choose which opinion to credit but may not reject evidence in the record for no reason. *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). An ALJ who rejects the opinion of a treating physician outright may do so only on the basis of contradictory medical evidence. *Id.*

The ALJ properly accorded little weight to Dr. Tronetti's 2008 report because it offered an opinion on an issue reserved to the Commissioner. R. at 33, 283-284, 583-585. The determination of whether a claimant meets the statutory requirements for disability under the Act is reserved to Commissioner. 20 C.F.R. §§ 404.1527(d), 416.927(d). "A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." *Id.* Even if offered by a treating source, a statement on this issue cannot be controlling. *Adorno v. Shalala*, 40 F.3d 43, 48-49 (3d Cir. 1994); S.S.R. 96–5P, 1996 WL 374183, at *5.

The ALJ provided further rationale for granting less weight to the opinion, finding it lacking in supporting explanation. R. at 33, 283-284. An ALJ is required to consider whether medical findings support a physician's opinion that a claimant is disabled. *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). More or less weight may be accorded depending upon the extent to which supporting explanations are included. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). For an ALJ to grant greater weight to an opinion it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques." §§ 404.1527(c)(2); 416.927(c)(2). The 2008 opinion consisted of little more than a summary of symptoms and diagnoses

accompanied by a conclusory statement that Plaintiff was temporarily disabled. R. at 33, 283-284. Although check mark boxes on the second page indicated that the assessment was based upon physical examination, medical records, and clinical history, these findings were not included. R. at 33, 283-284. Reports which consist merely of check mark boxes constitute weak evidence at best. *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993). The Court agrees with the ALJ's conclusion that Dr. Tronetti's 2008 opinion was not supported by medical findings. R. at 33. Accordingly, the decision not to accord it any significant weight was supported by substantial evidence.

Plaintiff proceeds to argue that the ALJ erred by ignoring Dr. Tronetti's opinion from 2010. (ECF No. 12). That report, along with numerous other medical records, was submitted to the Appeals Council after the ALJ's decision. R. at 6, 583-987. The regulations provide that

> [i]f new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the periods on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

20 C.F.R. §§ 404.970(b); 416.1470(b). If the Appeals Council denies review of the ALJ's decision, then the ALJ's decision becomes the final decision of the Commissioner. *Sims v. Apfel*, 530 U.S. 103, 107 (2000). Judicial review of the administrative decision is governed by the Act, which does not authorize review of the Appeals Council's decision denying review. 42 U.S.C. § 405(g). Evidence which was not before the ALJ cannot be used in support of an argument that the ALJ's decision was not supported by substantial evidence. *Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001). If a claimant seeks to rely upon evidence that was not before the ALJ, a reviewing court may, however, remand the case to the Commissioner but only if the

evidence is new and material and there is good cause for why it was not presented to the ALJ. *Id.*

In order for evidence to qualify as "new," it must be new in the sense that it is "not merely cumulative of what is already in the record." *Szubak v. Sec. of Health & Human Servs.*, 745 F.2d 831, 833 (3d Cir. 1984). The evidence must also be "material," meaning that it is relevant and probative and there is a reasonable possibility that it would have changed the outcome of the Commissioner's decision. Further, it must relate to the time period during which the decision was made. It must not consist of evidence of a later occurring impairment or of a subsequent "deterioration of the previously non-disabling condition." *Id.* Finally, the claimant must show good cause for why the new and material evidence was not submitted earlier. *Id.* These requirements exist in order to prevent claimants from being tempted to withhold evidence in hopes of getting another "bite of the apple" is the Commissioner denies benefits. *Id.* at 834.

Plaintiff has failed to provide anything more than a conclusory statement describing Dr. Tronetti's 2010 opinion as "new and material." (ECF No. 12 at 14). Although Dr. Tronetti's 2010 opinion relates to the time period before the ALJ's decision, Plaintiff has offered no explanation as to how it is probative or how it would have affected the decision. Moreover, Plaintiff did not provide any justification for withholding this evidence until after the ALJ's decision dated September 21, 2011. R. at 36. Remand is proper if the "district court learns of evidence not in existence or available to the claimant at the time of the administrative proceeding that might have changed the outcome of that proceeding." *Sullivan v. Finklestein*, 496 U.S. 617, 626 (1990). Because Plaintiff has failed to provide any demonstration that this evidence was "new and material" or show good cause for waiting until after the ALJ's decision to submit it, remand is not appropriate.

Plaintiff next argues that the ALJ erred by according greater weight to the opinion of the consultative evaluator, Dr. Zaydon. (ECF No. 12 at 13-14). First, Plaintiff contents that Dr. Zaydon's opinion did not indicate her medical specialty as required by the Social Security Administration's Program Operations Manual System ("POMS"). Accordingly, Plaintiff argues that the ALJ's decision to grant that opinion greater weight was not supported by substantial evidence. *Id.* Contrary to Plaintiff's observation, Dr. Zaydon's specialty code, 19 (internal medicine), appears in the record on the Initial Disability Determination form. R. at 86-87; POMS DI 26510.090. Accordingly, Plaintiff's argument that Dr. Zaydon was not qualified to offer an opinion on the limitations stemming from Plaintiff's impairments must fail.

Plaintiff proceeds to argue that Dr. Zaydon's opinion was not based on a complete record and the decision to accord it greater weight was not supported by substantial evidence. For the reasons discussed above, a remand for the consideration of new evidence is not appropriate. Further, The ALJ properly found that Dr. Zaydon's opinion provided a persuasive evaluation of the record and was supported by the weight of the evidence. R. at 34, 478-483. "The better explanation a source provides for an opinion, the more weight we will give that opinion." 20 C.F.R. §§ 404.1527(c)(3); 416.927(c)(3). Contrary to Plaintiff's characterization of Dr. Zaydon's report as a "check box or fill in a blank" form, her evaluation was accompanied by a thorough written report which discussed all of the relevant medical evidence. R. at 33, 483. Dr. Tronetti's 2008 opinion, comparatively, was devoid of any written discussion or supportive findings. R. at 33, 283-284. Accordingly, the ALJ's decision to accord greater weight to Dr. Zaydon's opinion was supported by substantial evidence.

In passing, Plaintiff cites *Bennett v. Barnhart*, 264 F. Supp 2d 238, 260 (W.D. Pa 2003), as follows: "this court noted in *Bennett v. Barnhart*, that the only medical opinions of record

which support the ALJ's RFC finding are those of the non-examining state agency physicians which do not amount to substantial evidence." (ECF No. 12 at 14). To the extent that Plaintiff is attempting to argue that an ALJ's decision to grant significant weight to the opinion of a consultative evaluator cannot be supported by substantial evidence, Plaintiff's reliance on *Bennett* is misplaced. The consultative reports at issue in *Bennett* were not consistent with the findings of the claimant's examining physicians and the ALJ's review of the evidence was incomplete. *Bennett*, 264 F. Supp 2d at 260. Accordingly, the ALJ's reliance upon those reports was not supported by substantial evidence. *Id.* At 258, 260. The regulations provide that state agency examiners are "highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation." §§ 404.1527(e)(2)(i); 416.927(e)(2)(i). The ALJ's decision to accord greater weight to the opinion of a consultative evaluator whose opinion was well supported and consistent with the record evidence was supported by substantial evidence.

### b. ALJ's Findings at Steps 4 and 5

Finally, Plaintiff argues that the ALJ erred in her finding at step 5 by denying Plaintiff's claims without relying on a vocational expert to evaluate her non-exertional impairments. (ECF No. 12 at 14-15). Defendant counters that because the ALJ's finding at step 4 was supported by substantial evidence, any error that the ALJ may have made at step 5 was irrelevant. (ECF No. 14 at 19). For the reasons that follow Plaintiff's argument is without merit.

The ALJ did not err by declining to consider Plaintiff's vocational factors at step 4.[4] The regulations provide that "if we find that you have the residual functional capacity to do your past relevant work, we will determine that you can still do your past work and are not disabled." 20 C.F.R. §§ 404.1560(b)(3); 416.960(b)(3). The vocational factors of age, education, work

---

[4]     As Defendant correctly notes, Plaintiff has not challenged the ALJ's finding at step 4. (ECF No. 14 at 19).

experience, and whether your past work exists in significant numbers nationally are not considered when assessing a claimant's ability to perform past work at step 4.  *Id*; *Williams v. Sullivan*, 970 F.2d 1178, 1181 n. 3 (3d Cir. 1992).  As discussed above, the ALJ completed a thorough review of the relevant medical evidence and assessed Plaintiff with an RFC which was compatible with her past work as a cashier.  R. at 29-34.  Plaintiff's vocational factors were not pertinent to the ALJ's analysis at step 4 and her decision was supported by substantial evidence.

Although the ALJ concluded that Plaintiff was not disabled at step 4, she proceeded to make an alternative step 5 finding that Plaintiff was capable of making a successful vocational adjustment to other jobs existing in significant numbers in the national economy.  R. at 34-35.  The ALJ explained that Plaintiff RFC was "reduced only somewhat by her non-exertional limitations."  R. at 35.  These additional limitations did "not substantially reduce the occupational base of light or sedentary work."  *Id.*  Plaintiff had the following non-exertional limitations:

> occasionally able to climb stairs and ramps, crouch and crawl; but can never climb ladders or scaffolds (due to her weight).  She should avoid *repetitive* overhead reaching and avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, fumes, odors, dusts, gases, poor ventilation, and hazards.

R. at 29.  (emphasis in orginal).  In *Sykes v. Apfel*, 228 F.3d 259, 261 (3d Cir. 2000), the Third Circuit held that

> in the absence of a rulemaking establishing the fact of an undiminished occupational base, the Commissioner cannot determine that a claimant's nonexertional impairments do not significantly erode his occupational base under the medical-vocational guidelines without either taking additional vocational evidence establishing as much or providing notice to the claimant of his intention to take official notice of this fact and providing the claimant with an opportunity to counter the conclusion).

*Id.*  Defendant points to Social Security Rulings (SSR) 83-14 and 83-15 in support of the ALJ's conclusion that these Plaintiff's non-exertional impairments did not diminish her occupational

base. (ECF No. 14 at 19). SSR 83-14, 1983 WL 31254, at *5 indicates that an inability to crawl on hands and knees or climb scaffolding will have "very little to no effect on the unskilled light occupational base." *Id* at *5. Further, in order "to perform substantially all of the exertional requirements of most sedentary and light jobs, a person would not need to crouch and would need to stoop only occasionally." *Id.* at *2. However, SSR 85-15, 1985 WL 56857, at *7, also indicates that "[s]ignificant limitations of reaching or handling … may eliminate a large number of occupations … and the assistance of a [vocational expert] may be needed." *Id*. Although the ALJ indicated that Plaintiff should avoid "*repetitive* overhead reaching," her decision did not elaborate on this non-exertional limitation. R. at 29-35. It is not clear whether she erred by not utilizing a vocational expert at step 5. Accordingly, the ALJ's alternative finding at step 5 is not supported by substantial evidence.

Although the ALJ's alternative finding at step 5 was not supported by substantial evidence, the ALJ properly found that Plaintiff was not disabled at step 4. R. at 34. The ALJ's error in her alternative finding at step 5 does not have any effect on the decision at step 4 and a remand directing the ALJ to provide further discussion would not affect the outcome of the case. Further, Plaintiff has not challenged the step 4 finding. Accordingly, remand is not appropriate and the ALJ's ultimate decision that Plaintiff is not disabled is supported by substantial evidence.

## VII.    CONCLUSION

For the foregoing reasons, the ALJ's decision to deny Plaintiff's claims for DIB and SSI is supported by substantial evidence. Reversal or remand is not appropriate. Accordingly, Plaintiff's motion for summary judgment is denied, Defendant's motion for summary judgment is granted, and the ALJ's decision is affirmed. Appropriate orders follow.

Dated: May 6, 2014

LISA PUPO LENIHAN
United States Magistrate Judge